## COMMONWEALTH *vs.* JAMES M. JUDGE.

Middlesex. February 6, 1995. - June 1, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Homicide. Malice. Intoxication. Practice, Criminal,* Instructions to jury, Cross-examination by prosecutor, Admissions and confessions, Voluntariness of confession, Assistance of counsel, Argument by prosecutor, Capital case. *Intent. Felony-Murder Rule. Constitutional Law,* Self-incrimination, Admissions and confessions, Assistance of counsel. *Evidence,* Admissions and confessions.

At the trial of an indictment for murder, in which the defendant was convicted of murder in the first degree by reason of deliberate premeditation, extreme atrocity or cruelty, and felony-murder, error in the judge's instruction on intoxication and the third prong of malice was not cause for reversal of the defendant's conviction based on felony-murder, where the required intent on that theory was not malice aforethought, but the specific intent associated with the underlying felony [438-440], and where the evidence was sufficient for the jury to conclude beyond a reasonable doubt that the defendant was guilty of murder based on the felony-murder theory [440-441].

At the trial of an indictment for murder, in which the defendant was convicted of murder in the first degree by reason of deliberate premeditation, extreme atrocity or cruelty, and felony-murder, error in the judge's instruction on intoxication and the third prong of malice was not cause for reversal of the defendant's conviction based on deliberate premeditation, where the required intent on that theory was not third prong malice and where the judge's instructions as a whole and on the effect of intoxication on the ability to form specific intent were correct. [441-442]

Evidence at the trial of an indictment for murder was sufficient to support the defendant's conviction on the theories of deliberate premeditation and felony-murder; error in the judge's instruction on intoxication and the third prong of malice as that related to the theory of murder by reason of extreme atrocity or cruelty did not warrant reversal of the defendant's conviction. [442-444]

Where, at a murder trial, the defendant voluntarily took the stand at a hearing on a motion to suppress his statements to the police, the defendant waived his right against self-incrimination, and the judge cor-

rectly allowed the prosecutor to cross-examine the defendant with respect to the truthfulness of his statements. [444-446]

At a murder trial, the evidence supported the judge's findings that the defendant was not intoxicated or coerced at the time he made incriminating statements to the police, and the statements were properly admitted in evidence. [446-448]

At a murder trial any error on Miranda grounds in the admission in evidence of the defendant's written confession was harmless where it did not contain any incriminating information different from that in the two properly admitted oral confessions the defendant had given the police after voluntarily waiving his Miranda rights. [448-451]

At a murder trial, the prosecutor's single reference in closing argument to the terrorizing of the victim by the defendant, in the context of the facts surrounding her violent death, was not so inflammatory or prejudicial, in the circumstances, to require a new trial. [451-452]

No reason appeared for this court to exercise its power under G. L. c. 278, § 33E, to grant a new trial or reduce the verdict of murder of first degree to a lesser degree of guilt. [452]

INDICTMENT found and returned in the Superior Court Department on July 3, 1986.

A pretrial motion to suppress evidence was heard by *James D. McDaniel, Jr.,* J., and the case was tried before him.

*Murray A. Kohn* for the defendant.

*Lincoln S. Jalelian,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant appeals from a conviction of murder in the first degree by reason of deliberate premeditation, of extreme atrocity or cruelty, and of felony-murder. He also was convicted of breaking and entering while armed in the nighttime with intent to commit a felony, and of armed robbery while masked. The defendant claims that the trial judge improperly instructed the jury on the third prong of the malice requirement for murder in the first degree and improperly admitted his written confession in evidence. The defendant also asks that we exercise our power under G. L. c. 278, § 33E (1992 ed.), and enter a lesser degree of guilt or order a new trial. We affirm the conviction for murder in the

first degree and decline to exercise our power under § 33E in favor of the defendant.

I. *Facts.* We set forth the facts in the light most favorable to the Commonwealth. *Commonwealth* v. *Nichypor*, 419 Mass. 209 (1994). During the early morning hours of June 5, 1986, the defendant and James MacKenzie[1] decided to enter the victim's dwelling wearing masks and rubber gloves in order to steal two or three thousand dollars which MacKenzie believed the victim had in her home. In the past, MacKenzie had done work for the victim, an elderly neighbor. The two men had spent part of the evening in a nearby house, where they had consumed alcohol and drugs.

The two men entered the victim's unlocked house between 2 and 3 A.M., and found her watching television. The defendant sat with her, while MacKenzie ransacked the house in search of cash. The defendant meanwhile offered the victim a drink. MacKenzie was only able to locate $20. Frustrated, he reentered the living room and knocked the victim to the floor where he kicked her repeatedly. MacKenzie then attempted to smother her with a pillow. As the two men were leaving the apartment, the victim moaned. The defendant then stabbed the victim, who was still on the living room floor, two times in the back with a kitchen knife. The defendant next opened the victim's shirt and lifted her undergarment, discussing with MacKenzie whether to rape her. The men decided against raping the victim for fear of being identified by their sperm.

After leaving the victim's home, the defendant removed his shirt, pants, gloves, mask, and boots, and threw the clothing, along with the murder weapon, into a nearby pond. The defendant then returned to MacKenzie's house where he had left a change of clothing.

Later that morning, the defendant spoke with Thomas McEwen, a longtime friend, and related the series of events

---

[1]James MacKenzie was tried separately and was convicted of murder on theories of felony-murder and murder with extreme atrocity or cruelty and armed burglary with assault. See *Commonwealth* v. *MacKenzie*, 413 Mass. 498, 499 n.1 (1992).

that had happened. The defendant explained to McEwen that, although he knew he had injured the victim, he was not certain that he had killed her.

The same day, a "Meals on Wheels" volunteer arrived at the victim's house to deliver lunch and found the victim on her living room floor. The woman then telephoned the police. A medical examiner pronounced the victim dead. An autopsy revealed that the victim had seventeen fractured ribs, two knife wounds (one of which punctured her left lung), and broken vessels in her eyes (indicating suffocation).

The murder was subsequently reported in the newspaper. When McEwen read the report in the newspaper, he communicated with the police. As a result, MacKenzie and the defendant were arrested. At the station, the defendant gave an oral confession without an attorney and then repeated the confession in the presence of a stenographer and signed the written statement. Both the oral and written confessions, as well as the defendant's representations to McEwen, were admitted at trial.

II. *The instructions on the third prong of malice.* The defendant primarily argues that the judge's instruction on the third prong of malice regarding intoxication negated all other instructions on the effect of intoxication on the defendant's ability to form the requisite intent. The defendant concludes that therefore he is entitled to a new trial. We do not agree.

Under *Commonwealth* v. *Sama*, 411 Mass. 293, 298 (1991) (reversing conviction of murder in the first degree based on extreme atrocity or cruelty), decided after the defendant's 1987 trial,[2] the defendant asserts that the jury should have been instructed that under the third prong of malice, "the Commonwealth had the burden of demonstrating that the defendant knew that he was stabbing the victim with a knife and that a reasonably prudent person, although not necessarily the defendant, would recognize that such con-

_____

[2]On our analysis, we need not reach the issue whether *Commonwealth* v. *Sama*, 411 Mass. 293 (1991), is to be applied prospectively to cases tried after the date of that decision or whether it applies to cases pending on appeal.

duct carried with it the risk of death or serious bodily injury."

Because the third prong of malice can support only a conviction of murder in the first degree that is based on the theory of extreme atrocity or cruelty, any error in the instructions on the third prong of malice is irrelevant to a conviction of murder in the first degree on theories of felony-murder and deliberate premeditation.

III. *Instructions on malice aforethought.* Under G. L. c. 265, § 1 (1992 ed.), murder in the first degree is a murder committed (1) with deliberate premeditation, (2) with extreme atrocity or cruelty, or (3) in the commission or attempted commission of a crime punishable by imprisonment for life. It is well established that to convict a defendant of murder in the first or second degree, a jury must find that the defendant formed the mens rea of malice aforethought. *Commonwealth* v. *Sires*, 413 Mass. 292, 296 (1992) ("The presence of malice is what makes an unlawful killing murder"). Without malice, an unlawful killing can be no more than manslaughter. *Id.* ("There is no distinction between murder in the first degree and murder in the second degree based on a difference in the element of malice"). See *Commonwealth* v. *Demboski*, 283 Mass. 315, 322 (1933) ("manslaughter imports the taking of human life by an act not justified in law, but without malice aforethought which is necessary to constitute murder" [citations omitted]). See also *Commonwealth* v. *Kane*, 388 Mass. 128, 133-134 (1983).

The definition of malice aforethought, as set forth in *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987), and its progeny, has three "prongs:" (1) specific intent to cause death; (2) specific intent to cause grievous bodily harm; or (3) knowledge of a reasonably prudent person that, in the circumstances known to the defendant, the defendant's act was very likely to cause death.[3] See generally McMahon,

---

[3] See *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987) ("Malice aforethought may be shown by proof that the defendant, without justification or excuse, intended to kill the victim or to do the victim grievous bodily harm. See *Commonwealth* v. *Puleio*, 394 Mass. 101, 108 [1985]. How-

Murder, Malice and Mental State: A Review of Recent Precedent Recognizing Diminished Capacity, from *Commonwealth* v. *Grey* to *Commonwealth* v. *Sama*, 78 Mass. L. Rev. 40 (1993).

A. *Felony-murder.* "[T]he felony-murder rule in the Commonwealth imposes criminal liability for homicide on all participants in a certain common criminal enterprise if a death occurred in the course of that enterprise. *Commonwealth* v. *Watkins*, 375 Mass. 472, 486 (1978)." *Commonwealth* v. *Matchett*, 386 Mass. 492, 502 (1982). The felony-murder rule substitutes the intent to commit a felony punishable by life imprisonment and inherently dangerous to human life, *Commonwealth* v. *Moran*, 387 Mass. 644, 651 (1982), for malice aforethought. See *Commonwealth* v. *Matchett, supra* at 502 ("The effect of the felony-murder rule is to substitute the intent to commit the underlying felony for the malice aforethought required for murder. Thus, the rule is one of 'constructive malice' "). See also *Commonwealth* v. *Nichypor, supra* at 213-216, and authorities cited.

The judge instructed the jury that, "[i]n order to convict the defendant of murder in the first degree under the felony murder rule, the Commonwealth must prove each of the following three elements beyond a reasonable doubt: First, that there was an unlawful killing. Second, that the unlawful killing was committed in the course of a felony or attempted felony punishable by life imprisonment. And third, that [in] the circumstances of this case, the defendant committed or attempted to commit the felony or felonies with conscious disregard for human life." The defendant does not challenge the instructions on the elements of felony-murder. The felonies underlying the jury's verdict of guilty of murder in the

---

ever, proof of such an intent is not required because malice aforethought may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act. *Commonwealth* v. *Chance*, 174 Mass. 245, 252 [1899]. See *Commonwealth* v. *Starling*, 382 Mass. 423, 428 [1981]; *Commonwealth* v. *Swift*, 382 Mass. 78, 83 [1980]").

first degree by reason of felony-murder were (1) breaking
and entering while armed in the nighttime with intent to
commit a felony and (2) armed robbery while masked.

The defendant seeks reversal of his conviction based on fel-
ony-murder on the ground that the trial judge's instruction
regarding intoxication and the third prong of malice negated
all other instructions on intent, including the instruction on
mens rea under the felony-murder rule.[4] The trial judge in-
structed the jurors that "malice aforethought may be in-
ferred if, in the circumstances known to the defendant, a rea-
sonably prudent person would have known that there was a
plain and strong likelihood that death would follow the con-
templated act"; and that "[i]n such a circumstance, ingestion
of drugs or alcohol would be irrelevant." The instruction that

---

[4]The defendant's trial strategy largely rested on a defense of intoxica-
tion. The judge did not instruct the jury as the defendant requested on the
effect of intoxication on felony-murder. Rather, he provided the following
instruction:

> "You may consider evidence of the defendant's intoxication at the
> time of the crime in determining whether the defendant had the req-
> uisite specific intent to commit the underlying felony or felonies. If
> the Commonwealth has proved beyond a reasonable doubt that the
> defendant possessed the requisite specific intent for the underlying
> felony or felonies, then the defendant's intoxication, if any, is not an
> excuse or justification for his actions. . . .
> "Each of the underlying felonies, that is, armed robbery and
> armed burglary, are specific intent crimes. Therefore, you may con-
> sider whether or not the defendant's state of intoxication at the time
> of the commission of the crime was so severe as to render him inca-
> pable of [having] the specific intent required for the commission of
> each crime.
> "If you find that he was so intoxicated, then you must find the
> defendant not guilty of murder in the first degree under this prin-
> ciple or rule. If, however, you find that he was not so intoxicated,
> then you must return a verdict of guilty of murder in the first
> degree."

The defendant does not dispute that this charge standing alone was cor-
rect. Rather, he argues that the instruction on the effect of intoxication on
the ability of the defendant to form malice aforethought as defined by the
third prong of *Commonwealth* v. *Grey, supra,* negated the otherwise cor-
rect instructions as to the effect of intoxication on the defendant's ability
to form specific intent. For the reasons discussed in the text, we do not
agree.

"the ingestion of drugs or alcohol would be irrelevant" was error. The defendant's assertion, however, that the erroneous instruction on the third prong of malice tainted the instruction on the requisite intent for felony-murder is untenable. The judge specifically instructed the jury that the mens rea for the felony *substitutes* for malice aforethought required for the other two theories of murder in the first degree: "The intention to commit some other requisite felony amounts to malice aforethought making the crime murder. As I said before, in felony murder, the intention to commit some other felony amounts to malice aforethought making the crime murder." Thus, logically, no flawed instruction on malice aforethought could have tainted the jury's deliberations as to whether the defendant possessed the requisite intent under the felony-murder rule because the three prongs do not relate to the intent requisite for a felony-murder conviction.[5]

Finally, after reviewing the record as a whole, G. L. c. 278, § 33E, we note that the evidence was more than ample to submit the case to the jury on the charge of murder in the first degree by reason of felony-murder. The defendant told McEwen and the police, "We were going to break in and steal some money." He also said, "I think, I didn't go in there to murder her though, I just went in there to get money." The defendant explained that he took a knife from MacKenzie, which had been taken by MacKenzie from the kitchen, and that he sat by as MacKenzie began suffocating the victim. The defendant said, "I think I must have stabbed her." The defendant also stated that after the stabbing, he found $20 in the victim's purse. The evidence thus was sufficient to submit the case to the jury on a theory of felony-murder, and we affirm the conviction of murder in the first degree on that theory. *Commonwealth* v. *Nichypor, supra* at

---

[5]The jury convicted the defendant of both felonies with which he was charged. The defendant makes no claim of error as to the felony convictions. Specifically, the defendant does not challenge the instructions as to the mens rea of those felonies and, after reviewing the instructions, we conclude there was no error in those instructions. Those convictions are affirmed.

212, quoting *Commonwealth* v. *Chipman*, 418 Mass. 262, 270 n.5 (1994).

B. *Deliberate premeditation.* The defendant's challenge to his conviction of murder in the first degree based on a theory of deliberate premeditation on the ground that the instruction on the third prong of malice was flawed also is misguided. "We have said that where, as here, the jurors conclude that a defendant is guilty of murder in the first degree by reason of deliberate premeditation, and the jury instructions are correct on the first two aspects of malice (i.e., specific intent) and on deliberate premeditation, error, if any, in the omission of the effect of intoxication on the third aspect of malice is nonprejudicial. . . . There is no basis on this record for a different result." (Citation omitted.) *Commonwealth* v. *Wallace*, 417 Mass. 126, 134-135 (1994). See *Commonwealth* v. *Vazquez*, 419 Mass. 350, 355 (1995).

Deliberate premeditation requires specific intent — that the defendant act with the intent that his actions will cause death and that he acted with sufficient time (even if fleeting[6]) to reflect on that consequence. *Commonwealth* v. *Podlaski*, 377 Mass. 339, 345 (1979) (to convict on theory of deliberate premeditation jury must find "a conscious and fixed purpose to kill continuing for a length of time"), quoting *Commonwealth* v. *Satterfield*, 362 Mass. 78, 82 (1972). The third prong of malice, which by definition permits an inference of malice under an objective (a reasonably prudent person) standard based on the jury's determination of the defendant's subjective awareness of the circumstances, does not satisfy the requirement of specific intent for a conviction of

---

[6]See *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 230, cert. denied, 398 U.S. 916 (1967), quoting *Commonwealth* v. *Tucker*, 189 Mass. 457, 494-495 (1905) ("The word 'deliberately' in the expression 'deliberately premeditated malice aforethought' has reference to the prior formation of a purpose to kill rather than to any definite length of time. '[I]n view of the quickness with which the mind may act, the law cannot set any limit to the time. It may be a matter of days, hours, or even seconds. It is not so much a matter of time as of logical sequence. First the deliberation and premeditation, then the resolution to kill, and lastly the killing in pursuance of the resolution; and all this may occur in a few seconds' ").

murder in the first degree on a theory of deliberate premeditation. Because the instruction on the third prong of malice could not have negated the instruction on the requisite specific intent for a theory of deliberate premeditation, and because the instructions as a whole on deliberate premeditation and the effect of intoxication on the ability to form specific intent were not flawed, the conviction for murder in the first degree on the theory of deliberate premeditation also is affirmed.

C. *Extreme atrocity or cruelty.* Extreme atrocity or cruelty is the only theory of murder in the first degree to which the third prong of malice is relevant. Unlike the theories of felony-murder and deliberate premeditation — which respectively require the jury to consider whether the defendant formed an intent to commit a felony or whether the defendant formed an intent to kill and reflected on the consequence — the theory of extreme atrocity or cruelty does not have a requirement of specific intent. Rather, the determination whether an unlawful killing was perpetrated with extreme atrocity or cruelty "focuses both on the defendant's actions, in terms of the manner and means of inflicting death, and on the resulting effect on the victim, in terms of the extent of physical injury and the degree of suffering endured." *Commonwealth* v. *Lacy*, 371 Mass. 363, 367 (1976).

Extreme atrocity or cruelty requires the jury to consider the defendant's actions and their effect on the victim, but does not require that the defendant be aware of how shocking his actions were or how much suffering his conduct caused the victim. See *Commonwealth* v. *Lawrence*, 404 Mass. 378, 393-394 (1989); *Commonwealth* v. *Sinnott*, 399 Mass. 863, 879 (1987); *Commonwealth* v. *Golston*, 373 Mass. 249, 260 (1977), cert. denied, 434 U.S. 1039 (1978); *Commonwealth* v. *Appleby*, 358 Mass. 407, 415 (1970); *Commonwealth* v. *Gilbert*, 165 Mass. 45 (1895).[7]

---

[7]This fact-dependent inquiry is primarily a question for the jury. *Commonwealth* v. *Connolly*, 356 Mass. 617, 628, cert. denied, 400 U.S. 843 (1970) ("in the final analysis, the issue must be left largely to the deliberation of the jury . . . [to] determine when the mode of inflicting death is so

A defendant may be convicted of murder in the first degree on a theory of extreme atrocity or cruelty without the specific intent required by felony-murder or deliberate premeditation. Under the third prong of malice, the jurors could infer malice if, despite the defendant's ingestion of drugs or alcohol, in the circumstances known to the defendant, a reasonably prudent person would have known that, according to common experience, there was a strong and plain likelihood that death would follow the contemplated act. In determining whether the Commonwealth proved beyond a reasonable doubt that the defendant acted with malice under the third prong, the jurors must be instructed to consider the defendant's ingestion of alcohol and drugs on his knowledge of the circumstances of the crime. "[E]vidence of a defendant's voluntary intoxication is a factor for the jury to consider whenever the Commonwealth bears the burden of establishing the knowledge of the defendant beyond a reasonable doubt." *Commonwealth* v. *Sama, supra* at 299.

Of course, in order to convict the defendant of murder in the first degree based on extreme atrocity or cruelty, the jurors also must conclude that the manner and means of inflicting death and the victim's pain and suffering rose to a level of extreme atrocity or cruelty. If the jurors conclude that the Commonwealth proved malice aforethought but failed to prove that the defendant's actions and the victim's suffering rose to the level of extreme atrocity or cruelty, then the jurors could return a verdict of no more than murder in the second degree. See *Commonwealth* v. *Talbert*, 357 Mass. 146, 148 (1970).

In sum, on the third prong of malice, in a case in which there is evidence of the consumption of alcohol or some other drug sufficient, if believed, to create a reasonable doubt con-

shocking as to amount to extreme atrocity or cruelty"). See *Commonwealth* v. *Podlaski*, 377 Mass. 339, 348-349 (1979); *Commonwealth* v. *Knowlton*, 265 Mass. 382, 388-389 (1928). Because "any destruction of human life invariably includes some atrocity or cruelty, one cannot easily separate degrees of cruelty or atrocity by precise legal rules." *Commonwealth* v. *Connolly, supra.*

cerning the defendant's ability to be aware of the circumstances at the time he acted, the judge must instruct the jury to consider the effect, if any, of the defendant's consumption of alcohol or some other drug on his knowledge. See *Commonwealth* v. *Delaney*, 418 Mass. 658, 665 (1994).

The defendant's conviction for murder in the first degree based on felony-murder and deliberate premeditation is affirmed. The error in the instruction on the third prong of malice that the ingestion of alcohol and drugs was irrelevant does not affect the conviction on those grounds. " 'Where a crime can be committed in any one of several ways . . . [t]hen the defendant should be convicted if it is proved that he committed the crime in any of those ways.' *Commonwealth* v. *Chipman*, 418 Mass. 262, 270 n.5 (1994), quoting *Commonwealth* v. *Dowe*, 315 Mass. 217, 219-220 (1943)." *Commonwealth* v. *Nichypor, supra* at 212.

IV. *Scope of cross-examination at the suppression hearing.* At a pretrial hearing on his motion to suppress his confessions, the defendant took the stand. He argues that the right under the Fifth Amendment to the United States Constitution not to incriminate himself was violated when the trial judge, who was also the motion judge, permitted the prosecutor to cross-examine him as to whether incriminating statements against him were in fact true. According to the defendant, the judge should have limited cross-examination to questions directly related to the voluntariness of his confession. The defendant further asserts that he did not waive his right against self-incrimination by taking the stand at the suppression hearing, suggesting that the Fifth Amendment right can only be waived by taking the stand at trial. Finally, the defendant argues that the judge's failure further to restrict cross-examination of him at the suppression hearing chilled his right to testify at trial because it permitted the prosecutor to elicit incriminating statements. There was no error.

"[T]he scope of . . . cross-examination, including the extent of impeachment of a witness for credibility and competency, are well within the judge's sound discretion." *Com-*

*monwealth* v. *Carrion*, 407 Mass. 263, 273 (1990). See *Commonwealth* v. *Daye*, 411 Mass. 719, 735 (1992). This rule applies to cross-examination of criminal defendants who choose to testify on their own behalf. A criminal defendant has no right "to give evidence only which shall operate in his own favor . . . . Like all other witnesses, he is to tell the truth and the whole truth concerning any matter proper to be inquired about." *Commonwealth* v. *Mullen*, 97 Mass. 545, 546 (1867). See *Jones* v. *Commonwealth*, 327 Mass. 491, 493 (1951) ("When a defendant in a criminal case voluntarily takes the stand he waives his privilege against self incrimination to the extent that he renders himself liable to cross-examination on all facts relevant and material to the crime with which he is charged"); *Commonwealth* v. *Smith*, 163 Mass. 411, 433 (1895) (if a criminal defendant "seeks the benefit of testifying, he cannot stop short with matters which are favorable to himself, but must submit to be questioned also as to relevant matters which are adverse"). By taking the stand at the suppression hearing the defendant waived his right against self-incrimination.[8] *Commonwealth* v. *Mullen, supra* (when a defendant "offers himself as a witness, he waives his constitutional privilege of refusing to furnish evidence against himself, and may be interrogated as a general witness in the cause").

The prosecutor's inquiries as to whether the defendant had confessed to the police that he had been drinking, that he had been at the victim's home, that he had gone to

---

[8]The defendant suggests that by taking the stand at the suppression hearing, he did not waive his privilege against self-incrimination as he would have had he testified at trial. This is incorrect. The hearing on the motion to suppress was part of the proceeding against him, based on the same facts as those considered by the jury at trial. The timing of his testimony did not affect his waiver. *Luna* v. *Superior Court*, 407 Mass. 747, 751, cert. denied, 498 U.S. 939 (1990) (waiver applies where testimony was given in continuation of same proceeding, involving "the same charges and the same defendant"); *Commonwealth* v. *Penta*, 32 Mass. App. Ct. 36, 44-46 (1992) (testimony in pretrial hearings constituted waiver of right to assert privilege against self-incrimination at trial with regard to questions seeking related facts).

McEwen's home after the crime, and that he had confessed to McEwen that he knew he had harmed the victim but that he was unsure if the wounds were fatal, were all proper matters to test the credibility of the testimony given by the defendant on direct examination at the suppression hearing.[9] In addition, the defendant had adequate time to consult with counsel before answering the objected-to questions on cross-examination, because, after overruling defense counsel's objection, the judge allowed a brief recess at defense counsel's request. Rather than refusing to answer certain questions after consulting with counsel, after being so advised by the judge and conferring with counsel, the defendant nevertheless proceeded. Finally, we note that the defendant has a right to testify but not a right to perjure himself before a jury. *Commonwealth* v. *Harris*, 364 Mass. 236, 239 (1973). Thus the allowance of the challenged questions could not have burdened the defendant's right to testify at trial.[10]

V. *Admissibility of written confession.* The defendant did not object to the admission of the written confession. Nevertheless, on appeal he maintains that the judge improperly admitted his confession as voluntary because he asserts he was under the influence of alcohol and drugs at the time it was given. The defendant further asserts that the written confes-

---

[9] We reject the defendant's contention that by failing to limit the scope of cross-examination, the judge chilled the defendant's right to testify at trial. Assuming the defendant did not commit perjury at the suppression hearing, the only way his testimony could discourage his testifying at trial would be if he intended to change his account of events before the jury. The defendant has no right so to mislead the factfinder. See *Commonwealth* v. *Mullen*, 97 Mass. 545 (1867).

[10] Under Massachusetts law a criminal defendant who takes the stand "waives his privilege against self-incrimination as to all facts relevant to the crime charged and thus renders himself open to cross-examination on such facts . . . [i]n federal courts, the privilege is waived only as to matters reasonably related to the subject matter of direct examination." P.J. Liacos, Massachusetts Evidence 799 (6th ed. 1994). However, because, as we noted, the prosecutor's questions did relate to the defendant's testimony on direct examination, the constitutional significance, if any, of the difference between Massachusetts and Federal evidence practice need not be considered.

sion should not have been admitted because it was given outside the presence of his attorney.

In determining whether the written statement should have been suppressed, "We begin . . . with the well-settled proposition that the judge's findings of fact are 'binding in the absence of clear error . . . and [we] view with particular respect the conclusions of law which are based on them.' *Commonwealth* v. *Correia*, 381 Mass. 65, 76 (1980). While the judge's ultimate findings of fact and rulings of law, as they bear on issues of constitutional dimension, are open for reexamination by this court, such ultimate findings are 'entitled to substantial deference by this court.' *Commonwealth* v. *Bookman*, 386 Mass. 657, 661 n.6 (1982)." *Commonwealth* v. *Bottari*, 395 Mass. 777, 780 (1985).

A. *Intoxication and voluntariness of the confession.* The Commonwealth had the burden of demonstrating beyond a reasonable doubt, *Commonwealth* v. *Day*, 387 Mass. 915, 921 (1983) ("as a matter of Massachusetts practice, the Commonwealth must prove a knowing and intelligent waiver beyond a reasonable doubt"), that the defendant's waiver was knowing, intelligent, and voluntary. *Miranda* v. *Arizona*, 384 U.S. 436, 475 (1966). *Commonwealth* v. *Tavares*, 385 Mass. 140, 143, cert. denied, 457 U.S. 1137 (1982). *Commonwealth* v. *Cobb*, 374 Mass. 514, 518 (1978). The defendant's apparent strategy in taking the stand at the hearing on his motion to suppress was to provide evidence that he was so intoxicated at the time of the confession that he could not have knowingly, intelligently, and voluntarily waived his rights.

The judge found that "[t]here was no indication that [the] defendant was under the influence of alcohol or any other substance. He did not display any unsteadiness on his feet and his speech was not slurred. The defendant appeared alert and responsive to all questions." As to the defendant's claim that he was overcome by alcohol and drug dependence, the judge found that "[w]hatever [the] defendant's addiction might have been, the Court does not believe that he was affected in any significant way by drugs, alcohol, or any other

substance on June 12, 1986[, the day of his challenged confession].” Furthermore, the judge found that no physical coercion was used. “At no time while [the] defendant was at the office was he yelled at, threatened, or coerced by the police. No officer struck him or touched him in an aggressive or assaultive manner. There was nothing at any time unusual about [the] defendant’s behavior. [The d]efendant was allowed to smoke, use the bathroom, and drink water and coffee while he was at the office. [The d]efendant at no time appeared to be incoherent or detached from reality.” The judge’s findings that the defendant was not intoxicated or coerced were supported not only by the testimony of the police, but also by the defendant’s testimony that he signed the two Miranda waiver cards which were admitted in evidence and that he was able at the time of the statement to recall the murder in detail. *Commonwealth* v. *Bousquet*, 407 Mass. 854, 861 (1990). *Commonwealth* v. *Parker*, 402 Mass. 333 (1988).

B. *Right to an attorney.* We next consider whether the defendant actually invoked his right to counsel but police failed scrupulously to honor the defendant’s request. It is well established that, if an individual in custody “states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning.” *Miranda* v. *Arizona, supra* at 474. Once the right to counsel is invoked, the accused is not to be “subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.” *Edwards* v. *Arizona*, 451 U.S. 477, 484-485 (1981). See *Minnick* v. *Mississippi*, 498 U.S. 146, 149 (1990) (affirming “bright-line” *Edwards* rule). “If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect’s statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver

and his statements would be voluntary under traditional standards." *McNeil* v. *Wisconsin*, 501 U.S. 171, 177 (1991).

The judge made the following findings of fact regarding the discussion as to whether the defendant wanted counsel: "At Flaherty's request, [the] defendant agreed to make a statement on the record. Pamela Hamilton, a voice recorder, who had been called and had been waiting in the office for about three hours, set up her equipment in the conference room, at about 12:30 A.M., June 13, 1986. When Flaherty introduced the defendant to Hamilton, the defendant asked permission to call Attorney DeCourcy, his uncle. [Trooper] Moynihan then looked up DeCourcy's residential telephone listing in the phone book. He called the listed phone number but received no answer. Moynihan told [the] defendant that he was unable to reach DeCourcy. The call was placed from a telephone outside of the conference room. There was no clear evidence that [the] defendant actually observed Moynihan make the telephone call. [The d]efendant then reflected, 'I told everything any way, right?' He then decided that he wanted to continue to talk.

"Flaherty then read [the] defendant his Miranda rights on the record. [The d]efendant said that he understood his rights. When Flaherty next asked if he wanted to talk, [the] defendant responded, 'Yeah. My lawyer should be here, right?' Flaherty said, 'Pardon me?' [The d]efendant then replied, 'My lawyer should be here, though, shouldn't he?' Flaherty then went off the record for approximately forty-five seconds.

"Flaherty then told [the] defendant that if he wanted a lawyer he should call one, that it was his prerogative. [The d]efendant was told that if he couldn't afford a lawyer, one would be provided for him. Again, [the] defendant decided that since he had told everything, anyway, he would proceed with the recorded interrogation. Back on the record, in response to Flaherty's questions, [the] defendant reiterated his knowledge of his rights to counsel and his willingness to proceed without counsel present."

The first issue is whether the defendant invoked his right to counsel before making the recorded statement. "Invocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' . . . But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis* v. *United States*, 114 S. Ct. 2350, 2355 (1994).[11] Assuming that the defendant's initial request that his uncle be called was sufficient to invoke his right to counsel, the issue is whether, after the police went off the record, the defendant independently decided to confess on the record or the police initiated the conversation with him which led him to change his mind about exercising his right to counsel. *Edwards* v. *Arizona, supra. Commonwealth* v. *Perez*, 411 Mass. 249, 258 (1991) ("once a defendant has asserted his right to counsel, the police cannot question him further, unless the defendant initiates the conversation, even if the defendant has been given an opportunity to consult an attorney between invoking the right and the next interrogation").

The Commonwealth had the burden of proving beyond a reasonable doubt that, if the defendant did invoke his right to counsel, that he subsequently decided independently to

---

[11]We note that the facts of this case differ from those in *Commonwealth* v. *Todd*, 408 Mass. 724, 726 (1990), for example, where we held that the defendant had not invoked his right to counsel by "wonder[ing] aloud about the advisability of having a lawyer" but failed to make an affirmative request. The defendant in this case did request that his uncle, a lawyer, be called. However, he then went on the record again, suggesting he had decided to waive his right to counsel after all, see, e.g. *Commonwealth* v. *Hussey (No. 1)*, 410 Mass. 664, 672, cert. denied, 502 U.S. 988 (1991) ("defendant did not invoke his previously waived Miranda rights by making an affirmative request for an attorney . . . after the defendant attempted unsuccessfully in the presence of the police to reach his attorney, the defendant pushed aside a telephone book that had been proffered to him and, without police pressure, subtle or otherwise, said, 'I'm not going to wait. All right. I'll tell you what happened' ").

confess on the record without an attorney. *Commonwealth* v. *Day*, 387 Mass. 915, 920-921 (1983). The conversation between the officer and the defendant was off the record. Further, the judge did not consider whether the police or the defendant independently initiated the final decision to confess on the record without an attorney present. See *Edwards*, *supra* at 484-485. "[W]e are prepared to assume without deciding that the statements made by the defendant during his interrogation by the police . . . should not have been admitted in evidence because they were obtained in violation of the rule in *Edwards* [and its progeny]. We are satisfied nonetheless that any error in the admission of the statements has been shown to be harmless beyond a reasonable doubt." *Commonwealth* v. *Perez, supra* at 259 & n.7.

The defendant confessed orally to the police after being fully informed of the Miranda warnings and waiving those warnings. Further, the defendant gave a full account of the murder to his friend, McEwen, the morning after the murder. Both of these oral statements were presented to the jury (in addition to the written one) through the testimony of the police and McEwen, respectively. Because the written confession did not provide the jury with any incriminating evidence not contained in the two oral confessions, the admission of the written confession at trial was harmless beyond a reasonable doubt. *Commonwealth* v. *Perez, supra* at 260 (harmless error to admit questioned statements where "two statements in question contain nothing of importance that was not also contained in the defendant's first, properly admitted, statements from his initial interrogation").

VI. *Prosecutorial summation.* In describing the defendant's actions inside the victim's home leading up to her death, the prosecutor asked the jury to consider the victim's terror while MacKenzie ransacked her house and the defendant sat at her side. The defendant argues that this single sentence in the prosecutor's closing argument constituted an improper appeal to the jury's emotions. The statement did not create prejudice sufficient to impair the defendant's right to a fair trial.

Although prosecutors should not urge a guilty verdict on the basis of sympathy for the victim, *Commonwealth* v. *Sanchez*, 405 Mass. 369, 375 (1989), the prosecutor's closing argument was "based on what the jury saw and heard," *id.* at 376, quoting *Commonwealth* v. *Kozec*, 399 Mass. 514, 521 (1987), of the victim's violent death. The single reference by the prosecutor to "terrorizing" the victim was not so inflammatory or prejudicial as to require a new trial.

"[O]n the facts of given cases, close questions arise whether the prosecutor has gone over the line between fair and improper argument. In such cases, we must and do recognize that closing argument is identified as argument, the jury understands that, instructions from the judge inform the jury that closing argument is not evidence, and instructions may mitigate any prejudice in the final argument." *Kozec*, *supra* at 517. The jurors were so instructed as to arguments. The prosecutor's argument in this case cannot be said to have crossed the line dividing fair and impermissibly prejudicial argument.[12]

VII. *Relief under G. L. c. 278, § 33E.* The defendant seeks a new trial or entry of a lesser degree of guilt pursuant to G. L. c. 278, § 33E. After reviewing the record as a whole, we conclude that the interests of justice do not require a new trial or entry of a lesser degree of guilt.

*Judgment affirmed.*

---

[12]The defendant also seeks reversal on the ground that the trial judge's instruction on leading questions impaired his right to cross-examine witnesses. Essentially, the judge instructed the jurors that the facts suggested in leading questions which are answered in the negative are not evidence. See *Commonwealth* v. *Repoza*, 382 Mass. 119, 131 (1980), *S.C.*, 400 Mass. 516, cert. denied, 484 U.S. 935 (1987). The instruction was correct. We therefore reject the defendant's claim that the instruction created a substantial likelihood of a miscarriage of justice.