COMMONWEALTH vs. EDWARD B. THOMAS.

Middlesex.   September 8, 1987. — November 10, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Instructions to jury, Argument by prosecutor, Duplici-
tous convictions. *Evidence,* Fresh complaint, Expert opinion. *Rape.
Indecent Assault and Battery on a Retarded Person. Indecent Assault
and Battery.*

At a criminal trial, the prosecutor's remarks regarding the burden of proof, to
which no objection was made, created no substantial risk of a miscarriage
of justice where the judge's charge fairly and adequately stated the law
on the matter. [113-114]

In an appeal from convictions of sexual offenses, no issue was properly pre-
sented as to the admissibility of fresh complaint evidence which was,
at most, merely cumulative. [114]

At a criminal trial, no substantial risk of a miscarriage of justice was created
by the prosecutor's improper line of argument, to which no objection
was made, injecting his own credibility and personal beliefs into the
case, where the judge's specific response to the argument and his general
instructions were adequate to cure the impropriety of the remarks.
[114-116]

At a criminal trial, the prosecutor's statement that the defendant knew he
would be punished if convicted and his suggestion that only the defendant
had a motive to lie, to which no objections were made, created no
substantial risk of a miscarriage of justice where the judge gave a specific
and forceful curative instruction as well as detailed and accurate general
instructions. [116-117]

At the trial of an indictment for indecent assault and battery on a retarded
person, where the judge's instructions omitted the element of scienter,
there was a substantial risk of a miscarriage of justice inasmuch as the
jury may have convicted the defendant without a finding beyond a
reasonable doubt that the defendant knew the victim to be retarded.
[117-119]

Convictions for indecent assault and battery and rape of the same victim
were, on the facts presented, duplicative, and the indictment for the
lesser included offense was ordered dismissed. [119-120]

No error appeared at the trial of sexual offenses in the judge's refusal to strike
medical testimony of the physician who examined the victim. [120]

INDICTMENTS found and returned in the Superior Court Department on December 14, 1983.

The cases were tried before *James J. Nixon, J.*

After review by the Appeals Court the Supreme Judicial Court granted leave to obtain further appellate review.

*Eileen D. Agnes* for the defendant.

*Michael Fabbri,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was convicted by a jury on December 17, 1984, of rape, G. L. c. 265, § 22, and indecent assault and battery of a woman we refer to as "Christine." He was also convicted of indecent assault and battery on a retarded person, G. L. c. 265, § 13F, the second victim being a woman we refer to as "Camille." The Appeals Court affirmed the convictions in an unpublished memorandum and order, 23 Mass. App. Ct. 1101 (1986). We granted further appellate review and for the reasons which follow we affirm in part and reverse in part.

On appeal, the defendant challenges all three convictions[1] on the grounds that the prosecutor's closing argument created a substantial risk of a miscarriage of justice by misleading the jury on the burden of proof, by injecting personal beliefs into the argument, and by suggesting that, since the defendant knew he would be punished if convicted, only the defendant had a motive to lie. With respect to the rape conviction, the defendant also claims that the only physical evidence of the rape was improperly admitted, and that he was prejudiced by fresh complaint testimony admitted without limiting instructions.

---

[1] The verdict of guilty of indecent assault and battery on Christine was returned as a lesser included offense of indecent assault and battery on a retarded person, G. L. c. 265, § 13F. The defendant was also found not guilty on a separate indictment for indecent assault and battery on a retarded person, Camille, arising from an incident alleged to have occurred five days earlier than those at issue here.

The defendant was sentenced to a term of ten years at Massachusetts Correctional Institution at Concord on the rape conviction, and terms of five years on each of the indecent assault and battery convictions to be served concurrently with the sentence on the rape conviction.

He also seeks reversal of the conviction for indecent assault and battery on a retarded person for the additional reason that the judge failed to instruct the jury adequately on the element of scienter. In addition, the defendant claims that his conviction for indecent assault and battery on Christine is duplicative of his conviction for rape of the same victim.[2] Since none of these claims was raised adequately by objection at trial, he argues further that the cumulative impact of the claimed errors created a substantial risk of a miscarriage of justice.[3]

There was evidence from which the jury could have found the following. Camille and Christine were borderline-to-moderately retarded young adults who shared an apartment in Marlborough. Camille worked in laundry services at a nursing home and Christine worked in the cafeteria of a school. The defendant worked as an orderly at the nursing home.

On November 19, 1983, the defendant left the nursing home to pick up his and his coworkers' dinners. In the course of this activity he encountered Camille outside a pizza shop and drove her home. Upon arrival at the apartment house the defendant followed Camille upstairs to her apartment, saying he wanted to look at her apartment. Although she at first refused him admission, she eventually admitted him into the apartment.

After the defendant kissed her, Camille pushed the defendant away and went to the bathroom to tell Christine to get dressed and go for help; she then locked the bathroom door and proceeded to shower.

Christine dressed and was sitting on her bed drying her hair when the defendant closed her bedroom door and began to kiss and fondle her as he pushed her down on her bed. Although Christine protested, the defendant persisted in undressing her and penetrated her vaginally, causing her to bleed. After a few moments, Christine got dressed and went to the bathroom

---

[2] Our resolution of the issues here makes it unnecessary to consider other arguments raised by the defendant.

[3] The defendant has made no claim of ineffective assistance of counsel. Neither the defense counsel on appeal nor the attorney for the Commonwealth was involved at the trial level.

where Camille was still showering. Upon observing blood on Christine's hands and legs, Camille left Christine in the bathroom and went to get her clean clothes.

The defendant then touched Camille inside her underpants, but did not touch her genitals before she grabbed his hand and removed it. After Camille's second request that he leave, the defendant left the apartment at about 6:30 P.M. The defendant returned to work at 6:43 P.M. after picking up food for his coworkers at a McDonald's restaurant and proceeded to work the remainder of his shift.[4]

1. *Contentions that Relate to All Convictions.*

a. *Burden of proof.* During closing argument, the prosecution made several statements which the defendant challenges as misleading and grossly prejudicial misstatements of law regarding the Commonwealth's burden of proof. The defendant argues further that the judge's instructions were inadequate to remove the taint created by the prosecutor's statements. Because no objection or request for further instructions was made, our review is limited to a determination whether the alleged errors created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978).[5]

---

[4] Briefly summarized, the defendant's testimony in his own behalf was that, while he was at the House of Pizza picking up a sandwich, he was approached by Camille to buy a raffle ticket. He further testified that Camille repeatedly asked him to give her and Christine a ride to a "turkey shoot." Although he initially refused because he was on his supper break, he drove Camille home to fetch Christine. Camille invited him into the apartment and showed him around. After a few minutes he told Camille he could wait no longer. In the event that he had time to stop again on his return trip from McDonald's, Camille gave him her telephone number. He then left, having been at the apartment about ten minutes.

[5] Whether the prosecution's improper arguments infringed or denigrated constitutional rights, and, if so, whether the required review under the "harmless beyond a reasonable doubt" standard is separate and distinct from review for substantial risk of a miscarriage of justice are issues which have been neither properly brought before the court nor argued within the meaning of Mass. R. A. P. 16(a)(4), as amended, 367 Mass. 921 (1975). See, e.g., *Francis* v. *Franklin*, 471 U.S. 307 (1985); *Chapman* v. *California*, 386 U.S. 18 (1967); *Commonwealth* v. *Person*, 400 Mass. 136, 142 n.7 (1987); *Commonwealth* v. *Rembiszewski*, 391 Mass. 123, 135 (1984); *Commonwealth* v. *Hawley*, 380 Mass. 70, 89 (1980); *Commonwealth* v. *Garcia*, 379 Mass. 422 (1980); *Connolly* v. *Commonwealth*, 377 Mass. 527 (1979).

In his closing argument the prosecutor said, "If I have not met the burden which I accept willingly of proving beyond a reasonable doubt each and every element of the offenses as they are presently charged, if I have failed in that responsibility, *find him not guilty if you find that he is truly innocent*" (emphasis added). Approaching the conclusion of his remarks he stated, "Ladies and gentlemen, the Commonwealth has produced an overwhelming amount of evidence here for you. Because, *in order to find the defendant not guilty*, you have to disbelieve Christine; and you have to disbelieve Camille; and you have to disbelieve Debra Blum — Debra Talley and Mrs. Blum. You have to disbelieve all of those people. And, if you disbelieve those people, then I am, indeed, a bad person; because I have aided in a conspiracy to convict an innocent person. And that is not what happened over the last two days." (Emphasis added.)

Both of these statements adversely implicate the defendant's fundamental right to be presumed innocent. See *Francis* v. *Franklin*, 471 U.S. 307 (1985). We reiterate that "[l]awyers shall not and must not misstate principles of law nor may their summations infringe or denigrate constitutional rights." *Commonwealth* v. *Smith*, 387 Mass. 900, 903 (1983). However, in order to ascertain whether the improper statements created a substantial risk of a miscarriage of justice, we must view particular statements in the context of the entire argument, the judge's instructions, and the evidence at trial. *Commonwealth* v. *Fitzgerald, supra. Commonwealth* v. *Earltop*, 372 Mass. 199, 204 (1977).

Viewing the statements in this light, we conclude that there was no substantial risk that the jury misunderstood the Commonwealth's burden of proof. Directly following the second improper comment reproduced above, the prosecutor correctly stated, "[T]he standard is beyond a reasonable doubt." Shortly thereafter, he concluded by saying, "What we do have to do and I suggest what we have done is convinced your heart and your mind that you should have a settled conviction, settled conviction, that the defendant is guilty of what we have charged him with. And it is only fair after we have convinced you of that

that we ask you to find him guilty. And that's what I'm asking you to do. Thank you very much."

Most importantly, the judge gave lengthy, detailed, and accurate instructions regarding the meaning of proof beyond a reasonable doubt, instructions which comported with the time-tested language of *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). The judge added, "So as not to confuse any thinking that you may have, your duty is to determine on the facts that you find whether the defendant is guilty on evidence beyond a reasonable doubt. The defendant does not have to prove to you his innocence. There is the presumption of innocence. And that does not have to be shown. And you do not have to find him innocent. You do have the obligation, as a result of your deliberations, to find him guilty beyond a reasonable doubt. You do not find him innocent."

In the absence of a prompt objection by defense counsel there was no substantial risk of a miscarriage of justice resulting from the prosecutor's remarks regarding the burden of proof, where the judge's charge fairly and adequately stated the law on the matter.

b. *Fresh complaint testimony.* The defendant for the first time on appeal alludes to the prosecutor's reliance on fresh complaint and hearsay evidence as somehow rendering his argument improper or creating a substantial risk of a miscarriage of justice. Not only was the evidence admitted without objection but this issue is not presented here with the clarity required of appellate argument. *Tobin* v. *Commissioner of Banks*, 377 Mass. 909 (1979). Mass. R. A. P. 16(a)(4), as amended, 367 Mass. 921 (1975). In addition, our examination of the record reveals that the statements properly characterized as fresh complaints did not supply details of the crime otherwise not in evidence nor were they egregiously prejudicial. The testimony was, at most, merely cumulative. Cf. *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 519 (1972).

c. *Personal beliefs and credibility of the prosecutor.* The defendant next contends that the convictions are tainted because the prosecutor's remark, "[I]f you disbelieve those persons, then I am, indeed, a bad person; because I have aided in a conspiracy to convict an innocent person," as well as his state-

ments set forth below,[6] prejudiced the jury by imposing his personal beliefs. Except for the remark quoted above, the statements objected to are merely unfortunate and unartful isolated instances of the uses of the first-person pronoun which do not interject the prosecutor's personal belief of guilt into the jury deliberation. "Counsel has the right to argue inferences from the evidence favorable to his case, and the precise form should not control unless it tends to lead the jury to an improper inference not from the evidence but from the apparent personal knowledge of the attorney." *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 315 (1973).

The conspiracy remarks,[7] however, exceed the limits of propriety and cannot be explained away as a mere unartful attempt at proper argument. This line of argument impermissibly injects the prosecutor's own credibility as well as his personal beliefs into the case. "To permit counsel to express his personal belief in the testimony (even if not phrased so as to suggest knowledge of additional evidence not known to the jury), would afford him a privilege not even accorded to witnesses under oath and

---

[6] Regarding the testimony of Debra Talley, the prosecutor argued, "Now, it wasn't really significant testimony. It doesn't tie him in with either Christine or Camille. But he took the stand and said she was lying. Now, why would she lie? Why would she make that up? Do we have any motive for believing that what she said was not true? I don't believe we do. And I suggest to you that when the defendant took the stand and testified that she was lying, he was not aware of the significance of Ms. Talley's testimony and that he, in fact, lied to you."

The remaining allegedly improper statement injecting personal belief was, "Well, Mr. Brennan, in his closing statement, called your attention to a police report. And, ladies and gentlemen, that police report is three and a half, almost four pages long. And he read to you two paragraphs out of a four-page police report. And significant to me, I suggest significant to you, is the last three pages of this police report which recall in detail what happened in the apartment."

[7] Earlier in his closing remarks the prosecutor argued, "Now, the defendant took the stand; and he said he never said that. Was Ms. Blum lying, as well? Did Ms. Talley and Ms. Blum get together and conspire to convict Ed Thomas for no reason?" In a similar vein, he further argued, "Now, does Doctor Hunt and Ms. Blum and Debra Talley all conspire with Christine to put together a story like that? Does that theory of the defense that it never happened coincide with the physical evidence which you will have in the jury room?"

subject to cross-examination. Worse, it creates the false issue of the reliability and credibility of counsel. This is peculiarly unfortunate if one of them has the advantage of official backing." *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 547 (1971) (Tauro, C.J., dissenting), quoting *Greenberg* v. *United States*, 280 F.2d 472, 475 (1st Cir. 1960). In addition, the two remarks quoted here suggest to the jury that the only possible explanation for the congruence between the testimony of various prosecution witnesses was either that these witnesses were completely truthful and accurate or that they conspired to perpetrate a gross lie, an obviously implausible suggestion unsupported by the record evidence. This line of argument, therefore, further suggested to the jury that the testimony of these three prosecution witnesses had to be believed in toto and that any testimony of the defendant which diverged had to be discredited as a lie. Where credibility is at issue, it is certainly proper for counsel to argue from the evidence why a witness should be believed. Here, however, the prosecutor went beyond the bounds of proper argument. See, e.g., *Commonwealth* v. *Johnson*, 374 Mass. 453, 459 (1978).

The issue before us remains whether, in light of the defendant's failure to object to this argument, the specific curative instruction[8] or the judge's general instructions, these remarks created a substantial risk of a miscarriage of justice. We conclude that, in view of the judge's response to the argument and his general instructions, there was no substantial risk of a miscarriage of justice.

d. *Reference to punishment.* The defendant also objects to the prosecutor's statement that the defendant knew he would be punished if convicted and the suggestion that only the de-

---

[8] At the close of the prosecutor's argument and prior to his general instructions, the judge stated, "My concern about the closing argument of the district attorney was his remark to find the defendant guilty, you would have to find that there was a conspiracy on his part and on the part of several witnesses. That just is absolutely not true. It may be good trial tactics and good argument, and Lord knows all of us that ever tried cases do the best job we can in argument. But you would not be finding a conspiracy on the part of the district attorney if you find this defendant not guilty. So I ask you to disregard that remark."

fendant had a motive to lie. We pass over the serious deficiencies in the defendant's brief and argument on this issue because even in the face of those deficiencies it is apparent that no miscarriage of justice occurred.

This is not a situation where the prosecution inflamed the jury by references to the potential consequences of a verdict of not guilty, e.g., *Commonwealth* v. *Smith, supra* at 910-911; *Commonwealth* v. *Burke,* 373 Mass. 569, 574 (1977), or where the jury was made aware of sentencing consequences, e.g., *Commonwealth* v. *Ferreira,* 373 Mass. 116, 124-126 (1977). Moreover, the prosecuting attorney himself conceded in this portion of his argument that the jury should not consider the issue of punishment.

Finally, we assess the prejudicial impact, if any, of the prosecutor's argument by looking at the combined effect of all his errors. *Commonwealth* v. *Burke, supra. Commonwealth* v. *Borodine,* 371 Mass. 1 (1976), cert. denied, 429 U.S. 1049 (1977). The errors here were not of a nature impervious to curative instruction. In view of the judge's specific and forceful curative instruction addressing the most serious error, the detail and accuracy of the general instructions regarding the jury's role as fact finders, the nature of evidence, assessment of credibility, and burden of proof, we find that there was no substantial risk of a miscarriage of justice arising from jury deliberations distorted by prosecutorial error.

2. *Jury Instruction on G. L. c. 265, § 13F, Offense.*

On appeal, the defendant argues that his conviction for indecent assault and battery on a retarded person should be reversed because the judge's instructions omitted the essential element of scienter, viz., "knowing such person to be mentally retarded." G. L. c. 265, § 13F (1986 ed.).[9] Where, as here, defense counsel neither requested specific jury instructions nor objected to those given, the error committed is reversible only

---

[9] General Laws c. 265, § 13F (1986 ed.), provides, in relevant part: "Whoever commits an indecent assault and battery on a mentally retarded person knowing such person to be mentally retarded shall for the first offense be punished by imprisonment in the state prison for not less than five years or not more than ten years."

if the instruction created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). In reviewing the charge to determine whether it created such a risk, we examine the charge as a whole. *Commonwealth* v. *Pickles*, 393 Mass. 775 (1985).

At trial, the defendant was tried for three separate violations of G. L. c. 265, § 13F. The judge instructed the jury by first listing the essential elements of the offense. This general instruction omitted the requirement that the defendant must have known that the victims were retarded. The judge then carefully and methodically instructed the jury as to the elements it must find beyond a reasonable doubt, again omitting the scienter element. The judge repeatedly instructed the jury that if they found there was a nonpermissive touching, and if they also found the victim was retarded, the defendant was guilty. It was only with regard to the companion indictment, based upon offenses against Christine, that the judge stated, "Now, there again, you might find that she, technically, I would suppose, could be mentally retarded but that if he didn't know that or shouldn't have realized it, then they have not fulfilled the requirements of the indictment."

The Commonwealth argues that, in view of this single reference to scienter and the reading of four indictments, there was adequate basis for the jury to conclude that the defendant knew that Camille was in fact mentally retarded.

It is insufficient to posit that based upon the evidence the jury could have concluded that the defendant knew Camille to be retarded. Even if a jury could have so concluded, they were not told that they must find that such knowledge existed in order to convict. Cf. *Sandstrom* v. *Montana*, 442 U.S. 510, 526 (1978).

Viewing the judge's instructions as a whole, we conclude that the jury were not clearly apprised that in order to convict they must find that the defendant knew Camille to be retarded. Where there was a dispute on the issue, it is not enough that the charge relating to Christine made reference to the scienter requirement. Cf. *Commonwealth* v. *Gabbidon*, 398 Mass. 1 (1986). Indeed, the fact that where the requirement was men-

tioned the defendant was found guilty of only indecent assault raises a reasonable likelihood that the jury may have been confused in this regard. Moreover, it should be noted that no general statement of the charges can remedy a specific instruction which is defective "unless the general statement clearly indicates that its consideration must be imported into the defective instruction." *Connolly* v. *Commonwealth*, 377 Mass. 527, 536 (1979), and cases cited. Therefore, we find that there is a substantial risk of a miscarriage of justice insofar as the jury may have convicted the defendant under G. L. c. 265, § 13F, without a finding beyond a reasonable doubt that he knew Camille to be retarded. For this reason, we reverse the conviction and remand for a new trial.

3. *Duplicative Convictions*.

As to Christine, the defendant was convicted of both rape, G. L. c. 265, § 22, and indecent assault and battery, G. L. c. 265, § 13H, as the lesser included offense of indecent assault and battery on a retarded person, G. L. c. 265, § 13F. No charge concerning indecent assault and battery as a lesser included offense of rape was given by the judge or requested by the defendant. On appeal the defendant contends for the first time that these convictions are duplicative.[10] Where the defendant made no motion to reverse or correct the sentence and raises a question regarding the legality of the sentence for the first time on appeal,[11] we review the claim only to determine if a substantial risk of a miscarriage of justice occurred. *Commonwealth* v. *Coleman*, 390 Mass. 797 (1984).

As a general rule, indecent assault and battery, G. L. c. 265, § 13H, is a lesser included offense of rape under G. L. c. 265,

---

[10] The Appeals Court correctly decided that the defendant's challenge to sentencing on the indecent assault and battery conviction did not rise to the level of appellate argument within the meaning of Mass. R. A. P. 16(a)(4). However, duplication of sentences is one of those issues we find appropriate to reach nonetheless. See *Commonwealth* v. *Grasso*, 375 Mass. 138, 140 (1978); *Commonwealth* v. *Stewart*, 375 Mass. 380, 393 (1978).

[11] Defense counsel neither raised the issue of duplicative sentencing nor filed a motion to revoke or revise the sentence under Mass. R. Crim. P. 29, 378 Mass. 899 (1979).

§ 22. See *Commonwealth* v. *Egerton*, 396 Mass. 499, 503 n.3 (1986). Moreover, under the Commonwealth's as well as the defendant's rendition of the facts, it is clear that the indecent assault and battery and rape of Christine were "so closely related in fact as to constitute in substance but a single crime," *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 662-663 (1979), rather than a situation where the indecent assault and battery constituted a separate and incidental act. *Commonwealth* v. *Fitzpatrick*, 14 Mass. App. Ct. 1001, 1003 (1982).

Accordingly, the defendant cannot properly be sentenced both for rape and the lesser included offense. Therefore, the indictment for indecent assault and battery should be dismissed. *Commonwealth* v. *Jones*, 382 Mass. 387, 394-395 (1981).

4. *Admission of testimony of Dr. Hugh Hunt.*

The defendant contends that the judge erred in refusing to grant the defendant's motion to strike the testimony of Dr. Hunt on the ground that his conclusions, based on clinical observation, were unsupported by microscopic examination of Christine's hymenal laceration.[12] This contention is devoid of merit. Contrary to the defendant's assertion on appeal, defense counsel made no objection to the proffered testimony[13] and therefore may not object for the first time on appeal. In any event, we agree with the Commonwealth that this contention goes to the weight of the doctor's testimony, not its admissibility.

For the foregoing reasons, the judgment on the indictment for indecent assault and battery on a retarded person, Camille, is reversed, the verdict is set aside, and a new trial ordered. The judgment on the indictment for rape is affirmed. The judg-

---

[12] Dr. Hunt testified that he examined Christine in the hospital emergency room on November 21, two days after the incident. His clinical judgment based on the degree of healing was that Christine's hymenal laceration had occurred within the previous seventy-two hours. While taking a history he asked Christine if anything sexual had happened. Her reply was, "No." The examination on November 21 utilizing the Johnson rape detection kit revealed no evidence of sperm or foreign pubic hair.

[13] The defendant has apparently confused the testimony of Dr. Hunt with that of Dr. Ludwik Szymanski regarding the issue of retardation.

ment of conviction of indecent assault and battery on Christine is reversed, the verdict is set aside, and the indictment is to be dismissed in the Superior Court.

*So ordered.*