## Commonwealth *vs.* Miguel Ortiz.

No. 98-P-2191.

Worcester. May 4, 2000. - October 24, 2000.

Present: Brown, Perretta, & Greenberg, JJ.

*Controlled Substances. Practice, Criminal,* Assistance of counsel, Judicial discretion, Challenge to jurors, Argument by prosecutor. *Constitutional Law,* Assistance of counsel. *Evidence,* Guilty plea, Expert opinion. *Witness,* Police officer, Expert. *Error, Harmless.*

The judge at a criminal trial properly denied the defendant's request, made on the day trial was scheduled to begin, to discharge his counsel, where the defendant did not establish good cause for such discharge. [305-306]

At a criminal trial, the judge did not abuse her discretion in refusing to permit the defendant to introduce evidence of his alleged coventurer's guilty plea, where the fact of the plea did not have any tendency to exonerate the defendant. [306]

At the trial of indictments alleging distribution of heroin, a police officer's improper testimony that he "believe[d]" the defendant to be a "runner," i.e., "someone who brings customers to somebody who is selling," did not create a substantial risk of a miscarriage of justice, where the evidence at trial gave rise to a strong inference that the defendant's participation in a drug transaction was in the role of a "runner." [306-307]

Evidence at the trial of indictments alleging distribution of heroin was sufficient to warrant the denial of the defendant's motion for required findings of not guilty. [307-308]

A criminal defendant did not demonstrate that his trial counsel was ineffective for not challenging for cause a police officer who was seated on the jury whom the judge had declared impartial after voir dire, or for not having reserved a peremptory challenge to preserve the option of removing that juror in the event he was seated. [308-309] Brown, J., dissenting.

No substantial risk of a miscarriage of justice arose at a criminal trial from the prosecutor's inappropriate interjection of her personal reaction to the testimony of a witness, where the remark amounted to no more than an assertion that the testimony was not, as defense counsel maintained, incredible, and where the judge instructed the jury specifically on their exclusive role as fact finders. [309-310]

Indictments found and returned in the Superior Court Department on June 9, 1997.

The cases were tried before *Martha B. Sosman,* J.

*Daniel W. Rice* for the defendant.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. After a jury trial, the defendant, Miguel Ortiz, was convicted of distribution of heroin, and of doing so within 1,000 feet of a school zone.[1] The defendant appeals, alleging numerous errors by the trial judge, the prosecutor, and his trial counsel. We take them up seriatim and affirm the judgments.

1. On the morning of trial, December 10, 1997, defense counsel informed the judge that the defendant had requested that he be removed as the defendant's attorney. This was not the defendant's first such request: on November 18, he had asked for the removal of his trial counsel; he made that request again the day before trial. The judge who heard the defendant's request of November 18 gave the defendant the option of continuing with his current counsel or proceeding pro se. The defendant elected to proceed with his current counsel. The judge who heard the defendant's second request to remove counsel also denied it as well as his request for a thirty-day continuance so that he might prepare to represent himself.

In response to the trial judge's invitation to explain why he sought the removal of his attorney, the defendant's sole substantive complaint was that he had not had any motion hearings: "I just want my motion hearing just like everybody else." Defense counsel represented to the judge that he was "prepared to go to trial today."

A defendant's request to discharge counsel on the day trial is scheduled to begin "is a matter left to the sound discretion of the trial judge." *Commonwealth* v. *Tuitt,* 393 Mass. 801, 804 (1985), quoting from *Commonwealth* v. *Moran,* 388 Mass. 655, 659 (1983). The defendant bears the burden of establishing good cause to discharge counsel. *Commonwealth* v. *Moran,* 17 Mass. App. Ct. 200, 204 (1983). The judge gave the defendant the opportunity to explain why his trial counsel should be discharged: "Mr. Ortiz, what's the problem?" See *Commonwealth* v. *Chavis,* 415 Mass. 703, 711 (1993) (judge must allow defendant to present reasons he moved to discharge

---

[1]After the jury verdicts, the defendant pleaded guilty to that part of the indictment charging distribution of heroin that alleged a second or subsequent offense.

counsel). There was nothing in the defendant's response that raised even a suggestion of the kinds of problems — conflict of interest, incompetence of counsel, an irreconcilable breakdown in communications — that might have outweighed the Commonwealth's interest in the expeditious trial of this case. *Id.* at 712. In the circumstances presented, the judge's refusal to remove defense counsel was well within the bounds of her discretion.

2. Prior to impanelment of the jury, the defendant sought a ruling from the trial judge as to whether he could cross-examine undercover police Officer Larry Williams about his awareness of the fact that the defendant's alleged coventurer, Victor Bonilla, had pleaded guilty. It was not, however, Williams's awareness of Bonilla's plea that the defendant wanted to put before the jury, but rather the fact of the plea itself. The judge understood this. Her ruling did not address the questionable means (cross-examination of Williams) by which the defendant sought to put this information before the jury. Rather, the judge simply ruled that the defendant would not be allowed to introduce any evidence of Bonilla's guilty plea. She added, however, that "you may certainly discuss everything else about Mr. Bonilla and his actual involvement, . . . you are give[n] a free rein to question the officer about that."

The judge did not abuse her discretion in refusing to allow the defendant to introduce evidence of Bonilla's guilty plea. That guilty plea had no tendency to exonerate the defendant where he was being tried on the theory that he participated with Bonilla in the distribution of narcotics to Williams. In these circumstances, Bonilla's guilt was not inconsistent with the defendant's guilt. More than one person may be culpable for the distribution of the same controlled substance. Cf. *Commonwealth* v. *Fernandes,* 30 Mass. App. Ct. 335, 339 (1991) ("The codefendant's plea of guilty was not inconsistent with the defendant's guilt, for more than one person may possess the same narcotics").

3. Williams, the undercover officer in the transaction that resulted in the defendant's arrest, twice testified that in his opinion the defendant was a runner, i.e., "someone who brings customers to somebody who is selling." The defendant argues that this testimony was an inadmissible expression of opinion of his guilt.

A percipient police witness may also testify as an expert wit-

ness, though care should be taken in presenting such expert testimony: "It is easy for the line between specific observations and expert generalizations to become blurred in these situations." *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 579 (1998). Such blurring occurred here. While it was certainly permissible for Williams to explain what function a runner performed in the street level sale of drugs, his testimony that he "believe[d]" the defendant was a runner "amount[ed] to a personal assurance by the witness that the crime charged had occurred, and thereby constitute[d] an improper intrusion into the fact-finding function of the jury." *Id.* at 580. The defendant, however, made no objection to the improper testimony.

Based upon the evidence presented, we conclude that Williams's statement, that he believed the defendant was a "runner," did not create a substantial risk of a miscarriage of justice. Williams testified about the defendant's participation in the transaction: the defendant took money from Williams and gave it to Bonilla; the defendant received a packet of heroin from Bonilla; and, after removing some of the heroin from the packet for himself, the defendant gave the rest to Williams. See *Commonwealth* v. *Woods*, 419 Mass. 366, 375-376 (1995) (where evidence gave rise to strong inference of defendant's participation in drug transaction, improper expert opinion that he was involved in drug sale was harmless).[2]

4. The defendant's motion for required findings of not guilty was properly denied. Williams testified that he saw Bonilla hand the defendant a small glassine packet. The defendant opened this packet and poured white powder from it into a fold of paper which he then gave to Williams. Chemical analysis later determined that the powder in the paper fold contained heroin. Considered in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), this evidence was sufficient to establish that the defendant distributed a perceptible amount of heroin.

Moreover, this direct evidence of distribution, taken with Williams's testimony that the defendant brought him to Bonilla, was sufficient to warrant an inference that the defendant

---

[2]Our conclusion that Williams' testimony did not give rise to a substantial risk of a miscarriage of justice also disposes of the defendant's claim that his attorney's failure to object to the statement constitutes ineffective assistance of counsel. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 625 n.4 (1994); *Commonwealth* v. *Foster*, 48 Mass. App. Ct. 671, 677 (2000).

intended to distribute the heroin he passed to Williams. The defendant's argument to the contrary ignores the evidence of his actual distribution of heroin to Williams. Evidence of actual distribution supports an inference of intent to distribute, and it is irrelevant that the quantity of drugs distributed was small. Compare *Commonwealth* v. *Tripp*, 14 Mass. App. Ct. 997 (1982).

The evidence was also sufficient to prove that the defendant was engaged in a joint venture with Bonilla to distribute heroin. The defendant asked for and took money from Williams and gave the money to Bonilla, took a packet of heroin from Bonilla, and gave part of its contents to Williams. "From this evidence a rational jury could have inferred not only that [the defendant] was available and willing to help [Bonilla], but also that he, in fact, did so." *Commonwealth* v. *Blake*, 428 Mass. 57, 64 (1998). The defendant's contention that "the Commonwealth failed to establish the necessary element of agreement or intent" borders on the frivolous.

5. The defendant alleges that his trial counsel was ineffective for failing to challenge the seating of a police officer on the jury. The trial judge seated the police officer after he answered affirmatively the question, "You feel you can be fair and impartial weighing the testimony of any police officers who testify?" At the point that this juror was seated, the defendant had used all six of the peremptory challenges allotted him. He did not seek to have the juror challenged for cause.

Defense counsel cannot be faulted for declining to challenge for cause the seating of the police officer. The Supreme Judicial Court has explicitly rejected the contention that occupation as a police officer would be grounds for such a challenge. *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 460-461 (1989) ("We decline to adopt a rule that the mere fact that a prospective juror is a police officer, in the absence of a showing of prejudice or partiality, or connection with the particular facts involved at trial, would form the basis to sustain a challenge for cause"). See G. L. c. 234A, § 3 ("No person shall be . . . excluded from serving as . . . a juror because of . . . [his or her] occupation").

Even had defense counsel saved a challenge but then declined to exercise it to remove the police officer, that decision could not be faulted. See *Commonwealth* v. *Mello*, 420 Mass. 375, 396 (1995) (in a case of arson and murder, court infers that

counsel declined to challenge jurors who had relatives in law enforcement and firefighting because he was satisfied that they could be impartial).

The only question, then, is whether counsel was remiss in not saving a challenge to preserve the option of removing the police officer in the event that the judge seated him. (We assume that the juror questionnaires would have revealed, at the outset of jury selection, the prospective juror's status as a police officer. See G. L. c. 234A, §§ 22 & 23.) Under Superior Court Rule 6 (1989), counsel may challenge jurors only as they are seated; having once declined to challenge a juror, counsel may not use a remaining peremptory challenge to remove that juror in later rounds of the jury selection process. *Commonwealth* v. *Fruchtman*, 418 Mass. 8, 16 n.10, cert. denied, 513 U.S. 951 (1994). The operation of rule 6 often presents trial counsel with difficult tactical decisions in the use of his or her peremptory challenges. On this record, we decline to second guess the tactical decisions of defense counsel. He participated vigorously in the selection process and conferred with the defendant before exercising his final two peremptory challenges. We cannot fault counsel merely for his failing to retain a challenge to preserve the option of removing a juror found to be indifferent by the trial judge.

In sum, we find neither substandard performance by defense counsel nor the slightest showing of any loss of a substantial ground of defense, both of which the defendant would need to demonstrate in order to prevail on a claim of ineffective assistance of counsel. *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

6. The defendant's final claim is that the prosecutor improperly vouched for the credibility of Williams in her closing argument. The prosecutor began her closing argument by saying:

> "[Defense counsel] said that Officer Williams has an incredible version of the facts. I don't see what's so incredible about it. I wasn't shaken to the court [*sic*]. It happens every day."

At sidebar after the jury instructions, defense counsel said, "Th[er]e's one thing I would like to state for the record and only for the record, I would state an objection to some of the comments by the prosecution during the course of her closing arguments. I make those only for the record, your honor."

This objection was insufficiently particular to preserve for appellate review the claim of error the defendant now raises with respect to the prosecutor's closing argument. See *Commonwealth* v. *Hollie*, 47 Mass. App. Ct. 538, 541 n.3 (1999) ("trial counsel need not achieve perfection in identifying every impropriety . . . so long as the objection alerts the judge to the grounds on which trial counsel objected to the prosecutor's closing argument"). Accordingly, we consider only whether the asserted error in the prosecutor's closing argument created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Lyons*, 426 Mass. 466, 471 (1998). In making this assessment, we consider the contested remarks "in light of the entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial." *Commonwealth* v. *Mello*, 420 Mass. at 380.

The remarks complained of created no such risk. While the prosecutor's interjection of her own reaction to Williams's testimony was inappropriate, the alleged vouching amounted to no more than an assertion that the testimony was not, as the defendant had maintained, incredible. Such a statement does not constitute the sort of personal endorsement of the credibility of the Commonwealth's witnesses that might lead an appellate court to conclude that the prosecutor's remarks created a substantial risk of a miscarriage of justice. Compare *Commonwealth* v. *Thomas*, 401 Mass. 109, 114-116 (1987) (prosecutor's improper remark, "[I]f you disbelieve those persons, then I am, indeed, a bad person; because I have aided in a conspiracy to convict an innocent person," did not create a substantial risk of a miscarriage of justice in light of the judge's curative instructions addressed specifically to this remark).

At the outset of this one-day trial, the judge described for the jury the function of closing argument and explained in her final instructions the jury's role as fact finders and assessors of credibility. She specifically told the jury: "It is not up to the attorneys to decide who is believable, credible, reliable, . . . it is up to you."

In light of the insubstantial nature of the asserted error and the judge's instructions to the jury on their unique role as assessors of the credibility of witnesses, we find no substantial risk of a miscarriage of justice.

*Judgments affirmed.*

BROWN, J. (dissenting). I dissent because I believe that defense counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer," *Commonwealth v. Saferian*, 366 Mass. 89, 96 (1974), in several respects.

Notwithstanding the Supreme Judicial Court's permissive language in *Commonwealth v. Ascolillo*, 405 Mass. 456, 460-461 (1989), I believe that "any lawyer worth his salt," *Watts v. Indiana*, 338 U.S. 49, 59 (1949) (Jackson, J., concurring), would have vigorously challenged (first for cause, then peremptorily) the seating of a police officer on a jury. I view such a failure as "manifestly unreasonable," *Commonwealth v. Adams*, 374 Mass. 722, 728 (1978); it could not have been based on "informed, professional deliberation." *Ibid.*

This is a classic example of a trial that has been "pervaded by an aura of bumble." *Commonwealth v. Mosby*, 11 Mass. App. Ct. 1, 17 n.12 (1980). I summarily rehearse counsel's serious missteps: (1) the initial ineptitude is manifested in defense counsel's efforts, prior to jury impanelment, to obtain a favorable ruling from the judge; (2) the aforementioned failure to challenge the seating of the police officer; (3) counsel's failure to recognize an obvious departure from the guidance meticulously set out in *Commonwealth v. Tanner*, 45 Mass. App. Ct. 576, 581-582 (1998); and finally (4) the failure to object to the impermissible aspect of the prosecutor's closing argument.

In short, defense counsel did not meet the test for assessing attorney performance set out in *Commonwealth v. Saferian, supra,* and its progeny.