NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-657

COMMONWEALTH

vs.

PAUL FAGUNDES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant of rape of a child with force in violation of G. L. c. 265, § 22A; rape of a child aggravated by age, G. L. c. 265, § 23A (a); rape of a child, G. L. c. 265, § 23; two counts of indecent assault and battery on a child under fourteen, G. L. c. 265, § 13B; assault and battery, G. L. c. 265, § 13A; and threats to kill, G. L. c. 275, § 4.[1] On appeal, the defendant claims that (1) the judge erred in denying a new trial where the jury were exposed to extraneous material; (2) an indecent assault and battery conviction was duplicative of two of the rape convictions, which were also duplicative of each other; (3) the judge allowed improper evidence to be admitted; and (4) the Commonwealth made

_____

[1] The jury acquitted him of one count of rape of a child with force in violation of G. L. c. 265, § 22B.

improper remarks in its closing argument.  Concluding that one count of indecent assault and battery is duplicative of the rape counts, we vacate that conviction.  We otherwise affirm.

Background.  The Commonwealth presented the following evidence.  On weekends when the victim was in elementary school, she frequently stayed overnight at her paternal grandmother's house.  The defendant, who is the victim's uncle, lived with the grandmother.  One morning, the defendant entered the room the victim shared with the grandmother and asked the victim if she wanted to watch cartoons.  They went into the living room, where the defendant gave the victim juice and snacks while she watched television.  Eventually, she fell back asleep.  The victim woke up to the defendant touching and inserting his finger into her vagina.  She testified that "it was just that time that he only did that, but every other time he would do that and more."  On those subsequent occasions, instead of asking the victim to watch cartoons in the living room, the defendant took her to his bedroom, sometimes by dragging her out of bed.  There, the defendant anally raped her, inserted his hands into her vagina, and made her touch his penis.  He also pulled her hair, hit her head on furniture, swore at her, and one time put a knife to her throat.  Although it was unclear how frequently these assaults occurred, they stopped before the victim went to middle school, when the defendant moved out of the house.

2

Discussion.  1.  Extraneous material.  "When there is a claim of extraneous influence on a jury, a two-step procedure is to be followed.  First, the defendant bears the burden of demonstrating that the jury were in fact exposed to the extraneous matter.  To meet this burden [the defendant] may rely on juror testimony.  If the defendant meets this burden and the judge finds that extraneous matter came to the attention of the jury, the burden then shifts to the Commonwealth to show beyond a reasonable doubt that [the defendant] was not prejudiced by the extraneous matter" (quotations and citation omitted).  Commonwealth v. Kincaid, 444 Mass. 381, 386 (2005).  We review for clear error.  Id. at 387.

Here, it is evident that the judge followed the proper procedure.  The day after the verdict, a juror reported hearing comments during deliberations about the defendant's "gang tattoo"[2] and global positioning system (GPS) ankle monitor.  The judge conducted an individual voir dire of each of the jurors.  During her inquiry, the judge assessed the extent of each juror's exposure to the material and any discussion about it among the jurors.

Based on the voir dires, the judge determined that several jurors were exposed to the extraneous materials, however, any

_____

[2] The tattoo, on the defendant's left hand, consisted of stars arranged in the shape of a moon.

3

juror comments about the defendant's tattoo and ankle bracelet were "speculative in nature, unsupported by any claim of personal knowledge or experience and would be received as such by the average hypothetical jury."  See Kincaid, 444 Mass. at 389 (judge required to "focus on the probable effect of the extraneous fact on a 'hypothetical average jury'" [citation omitted]).  She observed that the tattoo was "pretty innocuous" and did not instill fear of gang retribution, and that jurors "shrugged . . . off" comments about gang relation.  The judge also concluded that the Commonwealth had presented "overwhelming evidence" at trial of the defendant's guilt, including the victim's "compelling, detailed testimony" and the testimony of a credible first complaint witness who corroborated details concerning key evidence.[3]  See id. (judge may consider overwhelming evidence of guilt).  The judge aptly pointed out that the tattoo and GPS bracelet were "insignificant in deciding the defendant's guilt" because it was a case of "interfamilial sexual abuse [that] did not implicate concerns and dynamics surrounding gang issues."  See id. (judge may consider whether extraneous materials produced such high probability of prejudice that error must be inferred).  We thus discern no error in the

---

[3] The judge further indicated that in "distinct contrast to the victim's compelling testimony and the corroborating testimony of her brother, the defendant's testimony was not credible" because of inconsistencies on critical issues.

judge's conclusion that a new trial was not required because the Commonwealth demonstrated beyond a reasonable doubt that the extraneous material did not prejudice the defendant. Id. at 386. See Commonwealth v. Colon, 482 Mass. 162, 167-168 (2019).

2. Duplicative convictions. a. Indecent assault and battery. We agree with the defendant's argument that the indecent assault and battery count of the indictment, for "touching of the vagina without penetration" (count five), was duplicative of the counts charging rape of a child by digital penetration (counts two and four).[4] "Indecent assault and battery is a lesser included offense of rape of a child by force. . . . The difference between the two offenses is the element of penetration." Commonwealth v. Donlan, 436 Mass. 329, 335-336 (2002). The element of penetration required for a rape conviction is satisfied by evidence that a defendant "touched or came into contact with the victim's vagina, vulva, or labia." Id. at 336. Here, the Commonwealth's theory of indecent assault and battery underlying count five was that the defendant "touched [the victim's] vagina not inside, but outside." Indeed, for this charge of indecent assault and battery, the judge instructed the jury that they must be satisfied that the

---

[4] The indecent assault and battery counts did not identify the particular type of touching alleged, however, it was specified on the verdict slips.

5

Commonwealth proved "touching of the vagina without penetration." As noted above, however, that is not the law. Touching of the vagina is, by definition, penetration. See Donlan, supra. Because the victim described no distinct touching of her genital area that did not involve touching her vagina, the conviction of count five is duplicative of the convictions of counts two and four and must be vacated. See Commonwealth v. Vick, 454 Mass. 418, 431 (2009).

b. Digital rapes. We disagree with the defendant's contention that the two separate counts for digital rape were duplicative of each other. The indictment and verdict slips for counts two and four indicated two different time frames that did not overlap, and the judge instructed the jury that the Commonwealth must prove that the offense charged by each count of the indictment occurred in the respective time frame. Because the victim testified to multiple incidents in both time periods that could support the offenses, counts two and four of the indictment were not duplicative. See Commonwealth v. Rodriguez, 83 Mass. App. Ct. 267, 273 (2013) (offenses not duplicative where verdict slip indicated charge premised on victim's testimony regarding separate act).

3. Evidentiary issues. a. Nurse's testimony and medical records. We are not persuaded by the defendant's argument that the sexual assault nurse examiner (SANE) nurse's testimony,

6

combined with the admission of medical records, impermissibly implied that the victim was sexually assaulted. The SANE nurse testified generally about the procedures involved in SANE examinations. She was clear that she never examined the victim. The nurse also opined that medical tests, particularly when performed outside an acute timeframe, rarely show evidence of penetration or trauma. Although she did refer to the victim's medical records once during direct examination, the nurse's testimony "did no more than give the jury information concerning the medical interpretation of an absence of any physical evidence of penetration; namely, such a finding does not exclude that sexual abuse occurred." Commonwealth v. Quincy Q., 434 Mass. 859, 872 (2001), quoting Commonwealth v. Colon, 49 Mass. App. Ct. 289, 293 (2000).

Despite assenting to the admission of the victim's redacted medical records, the defendant now contends that portions of the records that mentioned "date of incident," "assault city," "timing of last contact," and "most recent contact occurred greater than 6 months ago," in conjunction with the SANE nurse's testimony, created a substantial risk of miscarriage of justice. However, the records ultimately reflect a finding that the victim's examination was "within normal limits" and the "[a]bsence of specific findings neither confirms nor denies that abuse has occurred." On this record, we discern no risk of

miscarriage of justice. See Commonwealth v. Dargon, 457 Mass. 387, 397 (2010) ("references to 'assault' and 'assailant' that permeated" SANE records did not give rise to substantial risk of miscarriage of justice).

b. Defendant's "anger issues". The jury heard two references to the defendant's "anger issues." In a recorded interview with police the Commonwealth played for the jury, the defendant stated, "I got anger problems. I'm not gonna lie, I got anger problems." Then, during the prosecutor's cross-examination, the defendant confirmed that he had an "anger issue." The defendant now contends that this was inadmissible character evidence. We review for a substantial risk of a miscarriage of justice.[5]

"It is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged." Commonwealth v. Mullane, 445 Mass. 702, 708 (2006), quoting Commonwealth v.

---

[5] The defendant filed a motion in limine to exclude various statements he made during the police interview, including that "he has anger problems," on the ground that they were "extremely prejudicial" to his case. He also contested admission of the video as evidence because it showed him in handcuffs. The first time the defendant raises the argument that the statements were impermissible character evidence is on appeal. See Commonwealth v. Seino, 479 Mass. 463, 470 n.10 (2018) (motion in limine does not preserve objection on different ground).

8

Helfant, 398 Mass. 214, 224 (1986). We are not persuaded by the Commonwealth's argument that the defendant's statements regarding general anger issues were relevant to his state of mind when he sexually assaulted the victim and corroborated her account of violence during the assaults. See Commonwealth v. Bonds, 445 Mass. 821, 829 (2006) ("evidence of a person's character is not admissible to prove that he acted in conformity with that character on a particular occasion" [citation omitted]). To the contrary, it was error for the Commonwealth to present evidence showing the defendant had a propensity for anger to show he possessed the capacity to commit violence against the victim.

"An error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not 'materially influence[]' the guilty verdict." Commonwealth v. Alphas, 430 Mass. 8, 13 (1999), quoting Commonwealth v. Freeman, 352 Mass. 556, 564 (1967). We conclude that this error did not meet that standard. The Commonwealth's case was strong by virtue of the victim's testimony that the defendant repeatedly assaulted her and the corroborative testimony of the first complaint witness. Furthermore, notwithstanding the inclusion of references to the defendant's "anger issues," the jury found him not guilty of the offense of rape of a child with force by use of a dangerous weapon (a knife). See Commonwealth v. Sherman, 481 Mass. 464,

9

478 (2019) ("where the jury acquitted the defendant of one of the . . . rape charges, we conclude that it is unlikely that the [improperly admitted] evidence was given significant weight in the jury's evaluation of the defendant's testimony or culpability").

4. <u>Closing argument</u>.  The defendant asserts that the prosecutor implied the victim made prior consistent statements, misstated the meaning of an inconsistent statement, and improperly vouched for the victim's credibility.  The defendant did not object to the prosecutor's closing argument.  Therefore, our review is "to determine whether the statements were error, and, if so, whether they created a substantial risk of a miscarriage of justice."  <u>Commonwealth</u> v. <u>Sanchez</u>, 96 Mass. App. Ct. 1, 9 (2019).

a.  <u>Consistent and inconsistent statements</u>.  During cross-examination, defense counsel sought to impeach the victim by referencing statements the victim did not disclose during an earlier interview at the Children's Advocacy Center (CAC).[6]  In closing argument, the prosecutor made the following remarks:

> "[S]he didn't tell them every detail.  And I would submit to you that's not an inconsistent statement because somebody didn't ask her a certain question, or she may not have so told a certain detail, doesn't make it

---

[6] The victim's testimony that defense counsel argued was omitted from the CAC interview was that the defendant hit the victim's head against furniture, "clicked" his teeth with a tongue ring, and tried to contact the victim at a later date.

inconsistent. It's just more information. Now if she had been inconsistent for an hour, don't you think he would have brought that up over and over and over again to you? But he focused on things that she didn't say."

"A prior inconsistent statement is one that either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict. . . . An omission from the earlier statement is inconsistent with a later statement of fact when it would have been natural to include the fact in the initial statement" (quotation and citation omitted). Commonwealth v. Ortiz, 39 Mass. App. Ct. 70, 72 (1995). While the prosecutor's definition of an inconsistent statement was not technically correct, we discern no substantial risk of a miscarriage of justice where the judge instructed the jury that closing arguments were not evidence and provided a correct definition for an inconsistent statement.[7] See Commonwealth v. Olmande, 84 Mass. App. Ct. 213, 237 (2013).

b. Vouching. Next, the defendant contends that the prosecutor improperly vouched for the victim's credibility by

---

[7] The judge instructed the jury:

"To qualify as inconsistent, it is not necessary that the prior statement contradict in plain terms the testimony of the witness. It's enough to say the statement taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of a witness."

11

arguing that the victim should be believed because she discussed an alleged sexual assault with strangers.  The prosecutor argued in closing:

> "Conversations are going to differ depending on who you're talking to.  2017 she is talking to a total stranger.  What is the total stranger asking her about?  Sexual acts.  I submit [to] you that that's pretty hard to talk about, especially if it is a sexual assault.  He is suggesting to [you] that she's fabricating.  She is going to make all this up, all these humiliating, I would submit to you, details.  And they're complex.  If you're going to make it up keep it simple, right, because you're going to have to get up there and talk about it."

At the outset, we disagree with the defendant's characterization of the prosecutor's argument as bolstering the victim's credibility because she testified.  Instead, the prosecutor argued why the victim was not fully forthcoming in the initial CAC interview.  This is a material and meaningful difference because the prosecutor did not impermissibly suggest that the victim was entitled to greater credibility merely because she was willing to testify.  See Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 (2008).

Furthermore, "[w]here credibility is at issue, it is certainly proper for counsel to argue from the evidence why a witness should be believed."  Commonwealth v. Raposa, 440 Mass. 684, 694-695 (2004), quoting Commonwealth v. Thomas, 401 Mass. 109, 116 (1987).  Where the defense's theory of the case was that the victim fabricated the events, it was not improper for

12

the prosecutor to rebut the defendant's attack on the victim's credibility by saying that it would make no sense, if fabricating, for the victim to create a complicated story. See id. Viewing the challenged remarks "in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial," we conclude that they were within the bounds of permissible argument. Commonwealth v. Kolenovic, 478 Mass. 189, 199 (2017), quoting Commonwealth v. Gaynor, 443 Mass. 245, 273 (2005).

Conclusion. The conviction of count five of the indictment, charging indecent assault and battery on a child by "touching of the vagina without penetration," is vacated; the verdict on that charge is set aside; and that count of the indictment is dismissed. The remaining judgments, and the order denying the motion for a new trial, are affirmed.

So ordered.

By the Court (Rubin, Englander & Brennan, JJ.[8]),

Clerk

Entered:  August 7, 2023.

---

[8] The panelists are listed in order of seniority.

13