NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-622

COMMONWEALTH

vs.

DIRISU C. ALASA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Dirisu C. Alasa, appeals from a conviction after a jury trial in the Superior Court of trafficking a person for sexual servitude, G. L. c. 265 § 50 (a), and deriving support from prostitution, G. L. c. 272, § 7.  Although an agent's testimony intermittently blurred into expert testimony, we discern no substantial risk of a miscarriage of justice in light of its insignificance and cumulative nature.  Further concluding that testimony about the defendant's false statements and marijuana use was not so prejudicial as to create a substantial risk of a miscarriage of justice, we affirm.

1.  Background.  On December 11, 2018, Newton police officers and at least one Federal Bureau of Investigation agent

conducted a sex trafficking sting operation at a hotel in Newton. An officer responded to the online advertisement of a woman calling herself "Diamond" and, after a series of text messages, arranged for a one-half hour "date" at the hotel in exchange for $150. That afternoon, officers observed a woman of similar appearance to that in the online advertisement exit the passenger side of a motor vehicle and enter the designated hotel. The driver did not exit the vehicle and instead parked in the hotel lot, remaining there for the entirety of the encounter.

Upon entering the officer's hotel room, Diamond told him to place the $150 on the table and to send a text message to a phone number that stated, "Got the room, safe." When she pulled out a condom, the officer gave the prearranged signal, and officers in surrounding rooms entered the room and handcuffed Diamond.

At the same time, the agent and two officers approached the parked vehicle which had dropped off Diamond. One officer saw that the defendant had a cigar wrapper with marijuana in his lap, and the agent smelled marijuana. When asked, the defendant provided officers with a false name and claimed he did not have any form of identification on his person. The defendant said that "he dropped off a friend" and "didn't know why they were there." He said that he did not know the name of the friend.

2

A detective subsequently found a driver's license bearing the defendant's real name in his pocket.  He also found Diamond's belongings in the glove box and a cellular phone that was later determined to be the one to which the officer sent a text message from the hotel room.

2.  Standard of review.  "Because the defendant did not object at trial to the challenged testimony . . . , 'we review his claims to determine whether there was error, and, if so, whether the error created a substantial risk of a miscarriage of justice.'"  Commonwealth v. Cintron, 103 Mass. App. Ct. 799, 804 (2024), quoting Commonwealth v. Diaz, 100 Mass. App. Ct. 588, 596 (2022).  "A substantial risk of a miscarriage of justice exists when we have 'a serious doubt whether the result of the trial might have been different had the error not been made.'"  Commonwealth v. Valentin, 470 Mass. 186, 189 (2014), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002), S.C., 444 Mass. 72 (2005).

3.  Expert testimony.  "A percipient police witness may also testify as an expert witness, though care should be taken in presenting such expert testimony:  'It is easy for the line between specific observations and expert generalizations to become blurred in these situations.'"  Commonwealth v. Ortiz, 50 Mass. App. Ct. 304, 306-307 (2000), quoting Commonwealth v. Tanner, 45 Mass. App. Ct. 576, 579 (1998).  "In determining

3

whether an expert witness's testimony was permissible, 'the better practice is to focus the analysis on whether the evidence is explanatory,' as opposed to 'conclusory' or 'couched simply in terms of whether a defendant did or did not commit a particular offense.'" Commonwealth v. Lowery, 487 Mass. 851, 871 (2021), quoting Tanner, supra at 581.

Here, the Commonwealth recognized the risk posed by the same officer testifying as a percipient and expert witness and accordingly planned for a separate expert witness who was not a fact witness. At trial, the prosecutor specifically confirmed that the agent was not testifying as an expert.

As it happened, the agent's intended lay testimony intermittently blurred with expert testimony. For example, when describing his role in the sting operation, the agent used the term "date" and, when subsequently asked to define its meaning, explained, "Date is a term that's used in that environment. A date normally means meeting for a sex act." Because the defendant did not object to this explanation or to similar testimony, our review is limited to a review for a substantial risk of a miscarriage of justice. See Ortiz, 50 Mass. App. Ct. at 310.

The agent's testimony about the nature of sex trafficking sting operations, although lengthy, was of no particular significance to the defendant's guilt. The agent's testimony

4

about the meaning of "date" was duplicative of the expert witness's more detailed testimony about sex trafficking.  The agent's testimony about his interactions with the defendant was entirely factual, did not overlap with where the agent's testimony bled into expert testimony, and thus was not susceptible to being confused as conclusory by the jury.  See Lowery, 487 Mass. at 871.  Finally, any error was insubstantial given the later, properly admitted expert testimony and the judge's sua sponte instruction distinguishing expert and lay opinion during that expert's testimony.  See Commonwealth v. Huang, 489 Mass. 162, 177 (2022); Lowery, supra at 871-872.  Accordingly, we discern no substantial risk of a miscarriage of justice.

4.  Bad acts.  "It is long established that evidence of uncharged criminal acts or other misbehavior is not admissible to show a defendant's bad character or propensity to commit the charged crime, but may be admissible if relevant for other purposes such as 'common scheme, pattern of operation, absence of accident or mistake, identity, intent or motive.'" Commonwealth v. Dwyer, 448 Mass. 122, 128 (2006), quoting Commonwealth v. Marshall, 434 Mass. 358, 366 (2001).  "[E]ven if the evidence is relevant to one of these other purposes, the evidence will not be admitted if its probative value is outweighed by the risk of unfair prejudice to the defendant."

5

Commonwealth v. Foreman, 101 Mass. App. Ct. 398, 401 (2022), quoting Commonwealth v. Bryant, 482 Mass. 731, 734-735 (2019). "These matters are 'entrusted to the trial judge's broad discretion and are not disturbed absent palpable error.'" Commonwealth v. Waterman, 98 Mass. App. Ct. 651, 659-660 (2020), quoting Commonwealth v. Childs, 94 Mass. App. Ct. 67, 71 (2018).

Here, the officers' testimony concerning what the defendant told them when they first approached him was relevant and probative. After exiting his vehicle, the defendant claimed that he did not have identification, but his identification was found on his person. The defendant said he could not remember the name of the person he had dropped off, but the jury could infer this was false as Diamond's belongings were found in the defendant's vehicle and the phone retrieved from the vehicle was the one Diamond asked the officer to send a text message to from the hotel room. The defendant's immediate and successive provision of false information was relevant evidence of consciousness of guilt. See Commonwealth v. Alcantara, 471 Mass. 550, 555 (2015).

Evidence that the defendant was about to smoke a marijuana cigar was less probative, but still relevant. The defendant's claim that he was just dropping off a friend was rebutted by the evidence that he was preparing to smoke a marijuana cigar. This was consistent with the Commonwealth's theory that the defendant

6

intended to wait in the parking lot until Diamond finished acts of prostitution and then pick her up.  Considering the relatively limited social stigma to marijuana use, the judge would have been well justified in concluding that the probative value of this evidence outweighed its prejudicial effect, had the defendant objected.  See Commonwealth v. Bonds, 445 Mass. 821, 834-835 (2006).  We discern no substantial risk of a miscarriage of justice.[1]

Judgments affirmed.

By the Court (Blake, C.J., Ditkoff & D'Angelo, JJ.[2]),

Clerk

Entered:  December 27, 2024.

---

[1] "We are unpersuaded by the defendant's further argument that even if no single error warrants relief, the cumulative effect of the asserted errors justifies a new trial." Commonwealth v. Conley, 103 Mass. App. Ct. 496, 517 n.23 (2023).

[2] The panelists are listed in order of seniority.